Filed 3/12/15  In re A.R. CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

|  |  |
|---|---|
| In re A.R., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE, | |
| Plaintiff and Respondent, | E058924 |
| v. | (Super.Ct.No. J246600) |
| A.R., | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Barbara A. Buchholz, Judge.  Affirmed with directions.

Johanna S. Schiavoni, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Charles C. Ragland and Sabrina Y. Lane-Erwin, Deputy Attorneys General, for Plaintiff and Respondent.

1

The San Bernardino County District Attorney filed a Welfare and Institutions Code section 602 petition alleging that defendant and appellant A.R. (minor) resisted a peace officer (Pen. Code, § 148, subd. (a)(1)[1], count 1) and committed battery with injury on a peace officer (Pen. Code, § 243, subd. (c)(2), count 2). A juvenile court found both allegations true. Minor was previously declared a ward of the court for another offense and was placed on probation. Thus, the court continued him as a ward on probation, with additional terms.

On appeal, minor contends that the trial court erred in denying his motion to dismiss under Welfare and Institutions Code section 701.1 as to counts 1 and 2. He specifically argues that: (1) as to count 1, there was insufficient evidence that the officer was lawfully performing her duties; (2) as to count 1, there was insufficient evidence that he knew or reasonably should have known that the officer was a peace officer; and (3) there was insufficient evidence to support the true finding in count 2 because he was acting in self-defense. Both parties agree that the record should be modified to reflect that the court's true finding in count 2 was a violation of Penal Code section 243, subdivision (b), not subdivision (c)(2). We direct the superior court to amend the minute order and Juvenile Detention Disposition Report with regard to count 2. Otherwise, we affirm.

---

[1] All further statutory references will be to the Penal Code, unless otherwise noted.

## FACTUAL AND PROCEDURAL BACKGROUND

Officer Ernesto Hernandez was a campus security officer for Colony High School. At the jurisdictional hearing in this matter, he testified that, on March 14, 2013, he responded to a call for service at the high school nurse's office in the early afternoon. When he arrived at the nurse's office, minor was sitting on a bed. The nurse and assistant principal were standing in the office with him. Officer Hernandez asked minor if he wanted to stay in the nurse's office or go to the assistant principal's office, where he was supposed to receive discipline. Minor did not respond, but got up and started to walk out of the nurse's office. Officer Hernandez assumed minor was going to the assistant principal's office, but minor started walking the opposite direction. Officer Hernandez called him to come back and go to the assistant principal's office. Minor ignored him and kept walking.

Officer Maria Paredes was the school resource officer at Colony High School, and her role was to protect the safety of the students and faculty. She received a call from the dean's office that same day, while she was on her lunch break. There was a male on campus who was thought to be a non-student from Los Angeles visiting his girlfriend. Officer Paredes was called because the school had past instances where people had come onto the campus to fight other students or confront faculty members. She returned to campus after receiving that call. Officer Paredes was dressed in her police uniform, which had patches on both arms and a badge on the front identifying her as a police officer. She walked through the front lobby and headed to the dean's office. As she was

3

walking toward the office, she saw minor. Officer Hernandez saw Officer Paredes about 15 feet away, flagged her down, and told her to stop minor because he was trying to leave the school without permission. Officer Hernandez testified that he raised his left hand and said, "He won't stop. He's trying to leave." Officer Paredes testified that Officer Hernandez motioned to her and said something to indicate that minor was the person she was looking for.

Officer Paredes turned around and saw minor going toward the doors in the front lobby. Minor was on his phone. Officer Paredes was behind him and did not think he would hear her, so she tugged on his "hoodie" to get his attention. Minor spun around and began cussing at her. Officer Paredes saw minor's face after he spun around. Minor threw his arms up as he spun around, and Officer Paredes thought he was going to hit her. By that time, Officer Hernandez was behind minor so he immediately grabbed both of minor's arms for a few seconds until minor broke loose. Officer Paredes pushed minor against the door to get him away from her. Minor kept cussing and pushed her to try to get away. Officer Paredes then pushed him against the wall. Minor asked why she was touching him, and she told him he was being detained. Minor continued to fight, cuss, and argue, and he and Officer Paredes fell down to the ground about three times. She kept telling him to stop, but he would not listen. During the fight, Officer Paredes asked Officer Hernandez to get her taser gun out of the holster and give it to her. The school principal was there, so he gave it to her. Officer Paredes then decided to place handcuffs on minor, so she asked the principal to take the handcuffs out of her utility belt. The

4

principal did so and gave the handcuffs to Officer Hernandez, who placed them on minor. As Officer Paredes conducted a patdown search for weapons, minor continued to be combative by cussing, getting in her face, and yelling at her. Even though Officer Paredes told him to stop, he ignored her request.

On cross-examination, Officer Paredes testified that when the dean's assistant called her to come to the school to help with the possible trespasser, the assistant did not give her a physical description of the trespasser. Officer Paredes also testified that, before she tugged on minor's hoodie from behind, she did not make eye contact with him, and she did not verbally identify herself as a police officer or tell him to stop. She expected him to stop and turn around to see who had tugged on his hoodie. Instead, he turned around, yelling and cussing at her to "get [her] f---ing hands off [him]." Minor asked why she was stopping him, and she just told him he was being detained, but did not say why.

At the close of the prosecution's evidence, minor's counsel moved to dismiss the allegations in both counts, pursuant to Welfare and Institutions Code section 701.1. The court heard extensive argument by counsel. The court asked for clarification on whether the allegation in count 2, under section 243, was for battery with injury on a peace officer. The court noted there was no evidence of injury to a peace officer presented. The prosecutor stated that the offense was not titled correctly in the petition and that it should have alleged that minor committed battery on a peace officer (§ 243, subd. (b)),

5

not battery with injury on a peace officer (§ 243, subd. (c)(2)). The court then denied the defense motion to dismiss.

Defense counsel called minor to testify. He testified that he was trying to leave campus on the day of the incident because he felt sick. Minor said he became angry because the campus security officer came to the nurse's office. Minor started cussing. He was told to go to the dean of discipline's office; however, he did not want to go there. He just wanted to leave campus.

Minor testified that he was on the phone with his mother when someone grabbed him by his hoodie. At first he thought it was a friend or somebody he knew grabbing him. However, he swung around and saw it was a police officer. Minor had his phone to his cheek, and raised his left hand up, just above his shoulder. He tried to put his phone in his pocket, and the officer grabbed his hands. Minor said he knew he was under arrest for something he did not do. Then, the officer pushed him to the wall. Minor denied that the officer gave him any commands. He also said that Officer Hernandez grabbed his arm and put it behind his back. Officer Hernandez then put his arm around minor's neck. In response, minor ducked out of the hold and moved away. Minor tried to get away from the officers. Officer Hernandez pushed minor toward Officer Paredes. Minor fell on top of her, and the three of them fell on the ground.

After hearing the testimony and closing arguments, the court found the allegations in both counts 1 and 2 true.

ANALYSIS

I.  The Court Properly Denied the Motion to Dismiss the Allegation in Count 1

Minor argues that the trial court erred in denying the motion to dismiss the allegation in count 1 for resisting a peace officer (§ 148, subd. (a)(1)) since there was insufficient evidence to sustain a true finding.  Specifically, he contends there was insufficient evidence that:  (1) Officer Paredes was lawfully performing her duties as a peace officer; and (2) minor knew or reasonably should have known that Officer Paredes was a peace officer.  We disagree.

A.  *Standard of Review*

Welfare and Institutions Code "[s]ection 701.1 provides that a minor's counsel may request, at the close of the People's case, that the court enter a judgment of dismissal:  'At the hearing, the court, on motion of the minor or on its own motion, shall order that the petition be dismissed and that the minor be discharged from any detention or restriction therefore ordered, after the presentation of evidence on behalf of the petitioner has been closed, if the court, upon weighing the evidence then before it, finds that the minor is not a person described by Section 601 or 602.'"  (*In re Anthony J.* (2004) 117 Cal.App.4th 718, 727; see also § 701.1.)

"Courts have held that [Welfare and Institutions Code] section 701.1 is substantially similar to Penal Code section 1118 governing motions to acquit in criminal trials and that therefore the 'rules and procedures applicable to [Penal Code] section 1118 . . . apply with equal force to juvenile proceedings.'  [Citation.]"  (*In re Anthony J.*,

7

*supra*, 117 Cal.App.4th at p. 727.)  Thus, "the requirement in a criminal case that on a motion for acquittal the trial court is required 'to weigh the evidence, evaluate the credibility of witnesses, and determine that the case against the defendant is "proved beyond a reasonable doubt before [the defendant] is required to put on a defense"' applies equally well to motions to dismiss brought in juvenile proceedings.  [Citation.]"  (*Ibid*.)  "Consequently, the standard for review of the juvenile court's denial of a motion to dismiss is whether there is substantial evidence to support the offense charged in the petition.  [Citation.]  In applying the substantial evidence rule, we must 'assume in favor of [the court's] order the existence of every fact from which the [court] could have reasonably deduced from the evidence whether the offense charged was committed and if it was perpetrated by the person or persons accused of the offense.  [Citations.]  Accordingly, we may not set aside the trial court's denial of the motion on the ground of the insufficiency of the evidence unless it clearly appears that upon no hypothesis whatsoever is there sufficient substantial evidence to support the conclusion reached by the court below.'  [Citations.]"  (*In re Man J.* (1983) 149 Cal.App.3d 475, 482.)

      B.  *There Was Sufficient Evidence to Support the Court's True Finding*

      Section 148, subdivision (a)(1), provides in pertinent part, that " '[e]very person who willfully resists, delays, or obstructs any . . . peace officer . . . in the discharge or attempt to discharge any duty of his or her office or employment, when no other punishment is prescribed . . .' is guilty of a misdemeanor."  (*In re Muhammed C.* (2002) 95 Cal.App.4th 1325, 1329.)  The elements of a violation of section 148, subdivision (a),

8

are as follows: "'(1) the defendant willfully resisted, delayed, or obstructed a peace officer, (2) when the officer was engaged in the performance of his or her duties, and (3) the defendant knew or reasonably should have known that the other person was a peace officer engaged in the performance of his or her duties. [Citations.]' [Citation.]" (*Ibid*.) Implicit in the second element is the requirement that the officer was acting lawfully at the time the offense against him was committed. (*In re Joseph F.* (2000) 85 Cal.App.4th 975, 982.) "Section 148 is most often applied to the physical acts of a defendant. [Citation.] For example, physical resistance, hiding, or running away from a police officer have been found to violate section 148. [Citations.]" (*In re Muhammed C.*, *supra*, 95 Cal.App.4th at p. 1329.)

     1. *The Evidence Showed That Officer Paredes Was Lawfully Performing Her Duties*

     Minor first argues the evidence did not show that Officer Paredes was lawfully performing her duties as a peace officer, since the detention was conducted "in an arbitrary, capricious or harassing manner." Minor specifically asserts that the detention was not based on articulable facts, since Officer Paredes was not given a description of the person who was allegedly trespassing on campus. He further asserts there was no evidence that he broke a school rule or failed to follow a command by Officer Paredes. Finally, he states that Officer Paredes initiated the detention through aggressive physical contact with him "by tugging and grabbing his clothing and taking him from behind by

9

surprise without any verbal warning, command or self-identification." We conclude that Officer Paredes acted lawfully.

The evidence showed that Officer Paredes was lawfully engaged in the performance of her duties when she detained minor. According to her testimony, she was on her lunch break when she received a call to return to the school to address the problem of a possible non-student trespassing on campus. When she arrived at the school, the campus security officer, Officer Hernandez, saw her and flagged her down. Officer Paredes testified that Officer Hernandez motioned to her and said something to indicate that minor was the person she was looking for. Given this information, it was reasonable for Officer Paredes to detain minor to see if he was trespassing. She turned around and saw minor going toward the front lobby, so she attempted to detain him. Officer Paredes was fulfilling her responsibility to provide a safe and secure environment for Colony High School.

Minor argues there were insufficient grounds to support the detention, since Officer Paredes "had no specific, articulable facts upon which to rely to believe that minor had or was about to commit a crime." He further asserts that she had no description identifying him as the purported trespasser, and she did not observe him violate any school rules. However, school officials or police officers "have the power to stop a minor student in order to ask questions or conduct an investigation *even in the absence of reasonable suspicion*, so long as such authority is not exercised in an arbitrary, capricious, or harassing manner." (*In re Randy G.* (2001) 26 Cal.4th 556, 559,

italics added; see also *In re William V.* (2003) 111 Cal.App.4th 1464, 1470-1471.) This is so because, "[u]nlike a citizen on the street, a minor student is 'subject to the ordering and direction of teachers and administrators. . . . [¶] [A student is] not free to roam the halls or to remain in [the] classroom as long as she please[s], even if she behave[s] herself. She [is] deprived of liberty to some degree from the moment she enter[s] school, and no one could suggest a constitutional infringement based on that basic deprivation.' [Citations.]" (*In re Randy G.*, at p. 563.) Furthermore, "police who assist in maintaining general order on school campuses[] need not articulate a specific crime which appears to be violated in order to detain an outsider for the limited purpose of determining the fundamental factors justifying an outsider's presence on a school campus." (*In re Joseph F.*, *supra*, 85 Cal.App.4th at p. 986.) Thus, Officer Paredes had the authority to stop minor to investigate whether he was a trespasser.

We note minor's argument that testimony from Officer Hernandez as to events occurring before Officer Paredes's involvement cannot be used to "justify the 'lawfulness'" of the detention. In support of this argument, minor asserts that the "collective knowledge" doctrine does not apply here, and that Officer Paredes's actions "must be judged based on the knowledge and actions of [her] alone at the time she conducted the detention." Minor appears to be arguing that we cannot impute Officer Hernandez's knowledge from his interactions with minor in the nurse's office or the hallway to support Officer Paredes's detention of minor. We agree. The evidence does not show that Officer Paredes knew minor was supposed to go from the nurse's office to

11

the assistant principal's office[2] to receive discipline and ignored Officer Hernandez's command to do so.  In any event, Officer Paredes's detention of minor was not based on that conduct.  Rather, as discussed *ante*, Officer Paredes was responding to a call from the school office that there was a possible non-student trespassing on campus.  When she arrived at the school, Officer Hernandez saw her, flagged her down, and indicated that minor was the person she was looking for.  Regardless of what Officer Hernandez's intention was in flagging Officer Paredes down, Officer Paredes detained minor to determine if he was the trespasser that the office had called her to investigate.

Minor further contends that Officer Paredes's initial contact with him consisted of "grabbing minor's clothing from behind with no advanced warning, no request to stop, and no presentation of the officer about her identity or reason for the detention."  Minor describes Officer Paredes's initial contact as "an unannounced and aggressive physical contact with minor from behind in a surprise move."  He asserts that the contact here "was a greater initial intrusion than in a case where an officer stopped a student to ask a question after identifying him/herself to the student and the student and officer [could] see each other."  In support of his argument, he cites the factual background in *In re Joseph F.*, *supra*, 85 Cal.App.4th at p. 980.  The officer in that case did identify himself as a police officer and ask the defendant to stop, in order to determine if he should be arrested for trespassing on school grounds.  However, the *In re Joseph F.* court did not

_____

[2] We note that Officer Hernandez testified that minor was supposed to go to the assistant principal's office, while minor testified that he was supposed to go to the dean of discipline's office.  These two testimonies are not necessarily inconsistent.

12

hold that a school officer is *required* to identify himself before requesting a student to stop. Moreover, we disagree with minor's characterization of the initial contact. Officer Paredes testified that minor was on the phone, and she did not think he would hear her; so, she simply "tugged on his hoodie to get his attention." This action could hardly be considered aggressive. In addition, minor immediately spun around and saw Officer Paredes face-to-face. She was wearing her police uniform, with patches on both arms and a badge on the front. Since minor could clearly see that she was a police officer, there was no need for her to identify herself further.

Minor further argues that Officer Paredes was not lawfully performing her duties, since she allegedly used excessive force against him. He asserts that when he spun around to see who grabbed him, Officer Paredes immediately grabbed his wrist and pushed him into the door and wall. "The reasonableness of a particular use of force is judged from the perspective of a reasonable officer on the scene, not by the 20/20 vision of hindsight. The inquiry is an objective one: Was the officer's action objectively reasonable in light of the facts and circumstances confronting him, without regard to his underlying intent or motivation? [Citation.] It is a pure question of fact whether a police officer used reasonable force in detaining a defendant, so reviewing courts determine if there is sufficient evidence in the record for a reasonable trier of fact to conclude that the force used in effectuating a detention was reasonable. [Citation.]" (*In re Joseph F.*, *supra*, 85 Cal.App.4th at p. 989.)

13

Here, as discussed *ante*, Officer Paredes merely tugged on minor's hoodie to get his attention. Officer Paredes pushed minor only *after* minor spun around, cussed at her, and threw his arms up in such a way that she thought he was going to hit her. Furthermore, when minor asked why she was touching him, she told him he was being detained. Nonetheless, he continued fighting, cussing, and arguing. Minor claims that his aggressive conduct "was an instinctive reaction, and a logical and natural response of self-defense against Officer Parades' initial use of unannounced, unexplained, excessive force." However, we disagree and do not consider his response reasonable. There was no reason for minor to fight, struggle, and refuse to comply with the officer. Moreover, it was reasonable for Officer Paredes to view minor's hostile conduct as being an indicator of a lack of legitimate presence on campus, thus justifying an increased effort in effecting a detention. (See *In re Joseph F.*, *supra*, 85 Cal.App.4th at p. 985.) Since Officer Paredes had the right to determine who minor was and why he was on the school grounds, her escalating efforts at detention were reasonable, given minor's resistance. (*Ibid.*)

2. *Minor Knew or Reasonably Should Have Known That Officer Paredes Was a Peace Officer*

Minor also argues that the court erred in denying the motion to dismiss because there was insufficient evidence that, at the time he reacted to Officer Paredes tugging on his hoodie, he knew or reasonably should have known that she was a peace officer attempting to perform her duties. He specifically asserts that Officer Paredes grabbed

14

him from behind without identifying herself, and there was no evidence he could see her or her uniform.

The offense of resisting an officer (§ 148, subd. (a)) occurs when the defendant willfully resists a peace officer, when the officer is engaged in the performance of her duties, and the defendant knows or reasonably should know that the person is an officer engaged in the performance of her duties. (*In re Muhammed C.*, *supra*, 95 Cal.App.4th at p. 1329.) In other words, the offense proscribes the act of willfully resisting the officer when the defendant knows the person is an officer. (*Ibid.*) Here, defendant is correct that when Officer Paredes tugged on his hoodie from behind, he did not know she was an officer. However, the evidence showed that he reacted to her aggressively and resisted her while he turned around *and* after he faced her. Given that Officer Paredes had her police uniform on, minor knew or reasonably should have known she was an officer. Nonetheless, even after he turned around and saw her, he continued to resist by cussing at her and throwing up his arms as if he was going to hit her. We note that "section 148 'is not limited to nonverbal conduct involving flight or forcible interference with an officer's activities. No decision has interpreted the statute to apply only to physical acts, and the statutory language does not suggest such a limitation.' [Citation.]" (*Id*. at pp. 1329-1330.)

Because we find that Officer Paredes could properly detain minor to determine whether he was permissibly present on campus, there was sufficient evidence to conclude that she was acting lawfully in the performance of her duties. She did not use excessive

15

force, and minor knew or reasonably should have known that she was an officer. Thus, the evidence was sufficient to support the juvenile court's finding that minor violated Penal Code section 148, subdivision (a). Accordingly, the court properly denied his motion to dismiss under Welfare and Institutions Code section 701.1.

II. The Court Properly Denied the Motion to Dismiss the Allegation in Count 2

Minor next argues that the trial court erred in denying the motion to dismiss the allegation in count 2 for battery on a peace officer since there was insufficient evidence to sustain a true finding. He essentially makes the same arguments he made regarding count 1, namely that there was insufficient evidence that Officer Paredes was lawfully performing her duties, or that he knew or reasonably should have known she was a peace officer. He also argues that he acted in self-defense in response to Officer Paredes's use of excessive force. We conclude that the court properly denied the motion to dismiss as to count 2.

"A battery is any willful and unlawful use of force or violence upon the person of another." (§ 242.) A violation of section 243, subdivision (b), occurs when a battery is committed against a peace officer "engaged in the performance of his or her duties . . . and the person committing the offense knows or reasonably should know that the victim is a peace officer . . . ."[3]

Minor incorporates by reference the arguments made *ante* that there was insufficient evidence that Officer Paredes was acting lawfully in the performance of her

_____

[3] See § III., *post*, regarding the battery finding in count 2.

16

duties when she detained him, and that he knew or reasonably should have known she was a peace officer. (*Ante,* § I.) For the reasons discussed *ante*, we disagree. (*Ante*, § I.)

Minor additionally argues there was insufficient evidence that he pushed or made contact with Officer Paredes, other than in self-defense. The record shows otherwise. "Even if a detention were unlawful, a person may not use force or violence to resist it unless the police officer effectuated the unlawful detention by excessive, i.e., unreasonable, force. [Citations.]" (*In re Joseph F.*, *supra*, 85 Cal.App.4th at p. 989.) Here, the detention was lawful, and Officer Paredes did not effectuate it with excessive force. (*Ante*, § I.) Nonetheless, the evidence demonstrated that minor used force and violence to resist her, but not in self-defense. (See *People v. Pinholster* (1992) 1 Cal.4th 865, 966 ["[A]ny right of self-defense is limited to the use of such force as is reasonable under the circumstances"], overruled on other grounds, as stated in *People v. Williams* (2010) 49 Cal.4th 405, 459.) As discussed *ante*, Officer Paredes simply tugged on minor's hoodie. In response, minor immediately spun around, starting cussing at her, and threw his arms up as if he was going to hit her. He proceeded to resist and fight her, even after she told him he was being detained. Furthermore, he failed to respond to her commands to stop resisting.

We conclude there was sufficient evidence that Officer Paredes was acting lawfully in the performance of her duties, that minor knew or reasonably should have known that Officer Paredes was an officer, and that minor willfully used unlawful force

17

or violence against her. Accordingly, the court properly denied minor's motion to dismiss under Welfare and Institutions Code section 701.1.

### III. The Record Should Be Modified With Regard to Count 2

The record reflects the allegation and the court's true finding on count 2 as a violation of section 243, subdivision (c)(2), which is battery with injury to a peace officer. Both parties agree that the allegation on count 2 was actually for battery on a peace officer (with no injury), pursuant to section 243, subdivision (b). Thus, the April 30, 2013 minute order and the Juvenile Detention Disposition Report should be amended to reflect the proper statute.

### DISPOSITION

The superior court clerk is directed to amend the April 30, 2013 minute order and the Juvenile Detention Disposition Report to reflect that the court found true the allegation in count 2 that minor committed battery on a peace officer, pursuant to section 243, subdivision (b). Otherwise, the judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS


HOLLENHORST
Acting P. J.

We concur:

RICHLI
J.

CODRINGTON
J.

18